**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01100-SKC-KAS

EVERETT MARTINEZ,

Plaintiff

v.

CITY AND COUNTY OF DENVER,

MIKO BROWN, DENVER CITY ATTORNEY,
In her official and individual capacities,

NICOLE DOHENY, CHIEF FINANCIAL OFFICER FOR THE CITY,
In her official and individual capacities, and

JEFF DOLAN, CHIEF STRATEGIST FOR DENVER MAYOR
In his official and individual capacities.

Defendants.

_____

# EXHIBIT 2 – OHR COMPLAINT

_____

1

**Submission to Office of Human Resources**

**Request for Assistance and Interim Measures**

This submission is provided to the City and County of Denver Office of Human Resources in connection with my request for assistance and review regarding workplace concerns arising from my role as General Counsel / Executive Vice President to Denver International Airport.

The following timeline provides a factual, chronological summary of events and communications relevant to these concerns, including issues related to legal compliance, supervisory conduct, and the conditions under which I have been asked to perform my duties. It is offered in good faith to support OHR's employee-relations and fact-finding function.

This submission is not intended to assert legal claims or conclusions, nor to assign motive, but rather to document material events as I experienced them and to request appropriate interim measures so that work may continue in a professional, non-retaliatory environment while OHR reviews the matter.

---

**TIMELINE OF EVENTS**

**A. Protected Legal Advice Regarding FAA Compliance (2024–2025)**

Throughout 2024 and 2025, I provided legal advice in my role as General Counsel to Denver International Airport (DEN) identifying significant FAA Grant Assurance and revenue-diversion risks associated with the proposed Park Hill land swap. This advice included concerns regarding fair-market-value requirements, arm's-length transactions, Form 743 compliance, and the risks of concealing the ultimate private-developer transfer from FAA review.

**B. Direction to Conceal Material Facts from FAA**

During discussions regarding the initial Form 743 filing, I was present for, or informed of, statements by City leadership that FAA should not be told that the land would be immediately transferred to a private developer following a City book transfer. I raised concerns that this approach created substantial compliance and enforcement risk for the Airport and the City.

**C. Sponsor-Controlled Appraisal and Valuation Override**

City officials directed and controlled multiple appraisals of airport land without meaningful DEN participation, resulting in progressively reduced valuations. I objected that this process risked FAA findings of revenue diversion due to the sponsor City's

control over valuation of airport assets transferred to itself and then to a private developer.

### D. Instruction Not to Create or Retain Records

In mid-2025, Acting City Attorney Katie McLaughlin instructed me by phone that neither I nor DEN should be "keeping a record" of the Park Hill transaction. I found this instruction inappropriate and immediately documented it internally, informed Airport leadership, and instructed my team that records should always be preserved when legal or ethical concerns exist.

### E. Second Form 743 Dispute and Political Pressure

When parcel boundaries changed and additional acreage was added, I advised that a new Form 743 submission to FAA was required. City leadership objected, citing political timelines and the Mayor's bond initiative, and urged reliance on the earlier filing despite material changes. After further review, I concluded that re-filing was legally required.

### F. Private Communications with Airport Outside Counsel

During 2025, Acting City Attorney McLaughlin engaged in repeated communications with DEN's outside counsel, Kaplan Kirsch Rockwell LLP, without DEN Legal participation or authorization, despite the firm being retained to represent the Airport.

### G. Brown–Dolan Call Referencing the Mayor and Allegations of Sabotage

In September 2025, City Attorney Miko Brown spoke by phone with Jeff Dolan and stated, in substance, that I and another DEN attorney were "actively sabotaging" the Park Hill transaction and that "the Mayor has taken note." This statement was overheard by members of my team. When I later raised this directly with Ms. Brown, she stated that I was being "lumped in with DEN leadership," which she offered as an explanation for why I was being accused of obstruction.

### H. Interference with Airport Outside Counsel and Reputational Harm

On or about September 19, 2025, I received a call from Peter Kirsch of Kaplan Kirsch Rockwell LLP, outside counsel to DEN. Mr. Kirsch stated that City CFO Nicole Doheny had contacted him earlier that day and asked him to "yell at" me regarding my legal advice and scrutiny concerning the Park Hill transaction.

That same day, I informed City Attorney Brown and Ms. Doheny by email of Mr. Kirsch's statement and reiterated that I was always willing to discuss concerns directly and that my advice was given in furtherance of my duties to the Airport.

Several days later, during an unrelated evening call regarding DEN's Airport Layout Plan process, Mr. Kirsch stated that Ms. Doheny had made what he characterized as

"outrageous accusations" about me personally on the earlier referenced call. I did not inquire further into those statements.

When I raised the issue with City Attorney Brown, she expressed frustration with Mr. Kirsch for revealing the comment to me, rather than addressing the conduct of Ms. Doheny.

### I. Escalation and Threats Tied to Legal Advice

Beginning in late September 2025 and continuing thereafter, City Attorney Brown repeatedly stated that I needed to "fix the relationship" with City political appointees or that "something would have to happen" if I did not. These statements followed my continued insistence on FAA compliance and proper legal process.

### J. FAA Scrutiny and Shifting Responsibility

After FAA scrutiny increased following public disclosures that the land transfer involved a private developer, City Attorney Brown initially acknowledged that City leadership had been warned by me, but subsequently stated that I and another DEN Legal attorney had failed to communicate risks adequately, despite my documented objections and advice.

### K. Directive to Divert FAA Correspondence

City Attorney Brown directed me to forward FAA correspondence addressed to the Airport CEO to City Hall officials, even over the CEO's objection. I stated that doing so would undermine my ability to serve as General Counsel to the Airport and violate professional obligations. Airport leadership ultimately agreed to manage those communications directly.

### L. Post-Hoc "Safety" Justification Directive

On January 6, 2026, during a call concerning City Council's rejection of an airline lease, City Attorney Brown instructed Airport leadership to investigate the airline's safety record after the fact so that, if FAA scrutiny occurred, the City could assert that the Council's vote was based on safety concerns. I objected that this would be misleading and inconsistent with FAA Grant Assurance 22. Airport leadership declined to pursue this approach.

### M. Threatened Discipline and Coerced Written Statement

In January 2026, City Attorney Brown stated that she possessed an email allegedly showing that I offered to research ways to stop the Park Hill transaction and threatened disciplinary action unless I "came clean" in writing to City political appointees. I denied wrongdoing and stated that advising the Airport on legal risks is a core duty of my position and required under FAA rules.

**N. Requested Interim Measures Pending OHR Review**

Pending OHR's review of the matters described above, I respectfully request the following interim measures to preserve a professional working environment and prevent further escalation:

**(a) No One-on-One Meetings with City Attorney Brown**
That I not be required to participate in further one-on-one meetings with City Attorney Brown regarding the Park Hill transaction, alleged misconduct, or other matters while this review is ongoing.

**(b) Structured Communications Going Forward**
That any necessary discussions on these topics occur either:

- with my direct supervisor, the Deputy City Attorney; or
- in meetings facilitated by OHR, with my ability to have legal representation present.

**(c) Supervisory Check-Ins Through the Deputy City Attorney**
That regular supervisory check-ins occur with the Deputy City Attorney rather than City Attorney Brown during this period.

**(d) No Discipline or Compelled Written Statements During Review**
That no disciplinary action, adverse employment decision, or compelled written "admission" be pursued based on my legal advice, communications, or conduct related to the Park Hill transaction while OHR review is pending.

**(e) Limitations on Contact with My Staff**
That City Attorney Brown not attend my office's staff meetings or conduct one-on-one meetings with members of my team during the pendency of this review. These interactions have occurred outside normal practices applied to other sections of the City Attorney's Office and have contributed to confusion and concern among my staff.

**(f) Permissible Alternative**
I have no objection to the Deputy City Attorney attending staff meetings or engaging with my team as appropriate, consistent with established supervisory practices.

**(g) Non-Retaliation Assurance**
That OHR advise on and help ensure appropriate boundaries to prevent retaliation, further coercion, or investigative "fishing expeditions" into my work or my team's work while this matter is under review.