**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01100-SKC-KAS

EVERETT MARTINEZ,

Plaintiff

v.

CITY AND COUNTY OF DENVER,

MIKO BROWN, DENVER CITY ATTORNEY,
In her official and individual capacities,

NICOLE DOHENY, CHIEF FINANCIAL OFFICER FOR THE CITY,
In her official and individual capacities, and

JEFF DOLAN, CHIEF STRATEGIST FOR DENVER MAYOR
In his official and individual capacities.

Defendants.

_____

# EXHIBIT 4 – MARCH 9 ATTORNEY LETTER
_____

1

# *Murray Law LLC*

*Via Email Only*

CONFIDENTIAL SETTLEMENT COMMUNICATION
PURSUANT TO FED. R. EVID. 408

March 9, 2026
David D. Powell Jr.
Garnett Powell Maximon Barlow & Farbes
1125 17th St., Suite 2200
Denver, CO 80202
Email: david.powell@garnettlegalgroup.com

**Re:  Everett Martinez and Denver International Airport, City and County of Denver**

David:

## INTRODUCTION

We represent Everett Martinez regarding his employment as General Counsel and Executive Vice President for Denver International Airport ("DEN" or the "Airport"), a department within the City and County of Denver (the "City").

This matter concerns (1) legal issues Mr. Martinez raised in his role as counsel to the Airport regarding compliance with Federal Aviation Administration ("FAA") grant assurances and the management of Airport assets under federal regulatory oversight; and (2) the City's retaliatory and discriminatory treatment of him after he raised these issues.

Mr. Martinez has been an attorney for the Airport for over nine years and has served as General Counsel since 2022. Throughout his service, he has received consistently strong performance reviews and has been recognized for his expertise in airport law and FAA regulatory compliance.

Denver International Airport receives significant federal funding through programs managed by the FAA and is subject to strict federal oversight, including adherence to FAA grant assurances and federal laws governing airport revenue diversion.

---

**Steven L. Murray**
Attorney at Law
3900 East Mexico Avenue • Suite 300 • Denver, CO 80210
T. 303-396-9952 • Email. steven@smurraylaw.com • www.smurraylaw.com
*Admitted to practice in Colorado, Illinois, and the District of Columbia*

Mr. Martinez's responsibilities include advising Airport leadership on compliance with those federal obligations and protecting the Airport's continued eligibility for federal funding.

As a licensed attorney practicing law, Mr. Martinez has an independent professional duty under the Colorado Rules of Professional Conduct to provide candid legal advice and to avoid taking part in conduct he reasonably believes will violate applicable law or regulatory requirements.

Beginning in 2024, Mr. Martinez raised legal concerns regarding FAA compliance in connection with two matters: (1) a proposed land swap transaction involving Airport property and the Park Hill Golf Course, and (2) directives relating to the treatment of an airline operating at the Airport.

In both matters, Mr. Martinez raised concerns regarding compliance with federal aviation law, the accuracy of representations to the FAA, and the legal and financial risks to the City and Airport for noncompliance with FAA requirements.

After raising those concerns, Mr. Martinez experienced increasing pressure from senior political officials to change or retract his legal analysis. When he declined to do so, a series of retaliatory actions followed.

Many events described below are reflected in contemporaneous records, including emails, memoranda, meeting notes, and related communications created during the relevant period. Mr. Martinez preserved these materials in the ordinary course of his professional responsibilities.

Mr. Martinez remains willing to resolve these matters privately and constructively, but he is ready to pursue all available remedies if a resolution cannot be reached.

## EXECUTIVE SUMMARY OF POSITION STATEMENT

With this submission, we are submitting a position statement that more fully describes the events in issue, the individuals involved, and the legal issues and claims presented, along with relevant exhibits.

This letter is submitted in contemplation of litigation.  We request the City, OHR,  Miko Brown, Nicole Doheny, Jeff Dolan, and Katie McLaughlin place a hold on all documents and materials related to this dispute and Mr. Martinez's employment.

## KEY ISSUES PRESENTED

The issues raised by Mr. Martinez involve several matters of legal and regulatory significance:

• Concerns regarding potential FAA revenue diversion arising from the proposed transfer of Airport land in connection with the Park Hill Golf Course transaction.

2

• A significant discrepancy between previously reported Airport land values based on an appraisal conducted at the request of the Airport's leadership and direction and the City's appraisal of the land used in connection with the proposed transaction.

• Discussions indicating that certain parts of the transaction involving a private developer were not intended to be disclosed to the FAA.

• A directive that Mr. Martinez and his legal staff not maintain records concerning the transaction.

• Statements by outside aviation counsel expressing serious concerns regarding the documentation and valuation issues associated with the transaction.

• Directives relating to the use of an airline's safety record as a potential post hoc justification for governmental actions affecting that airline.

• Repeated directives to Mr. Martinez to join the Mayor's political appointees' plan and objective of removing Phil Washington as the Chief Executive Officer of the Airport.

• Mr. Washington is a Black man. Mr. Martinez is a person of color. He identifies as Hispanic and Latino.

• Contemporaneous documentation and communications reflecting the events described in this statement.

• A sequence of retaliatory actions against Mr. Martinez after he raised these concerns in his role as General Counsel for the Airport.

## OVERVIEW OF CLAIMS

Based on the events described below, Mr. Martinez has viable claims he may assert in the United States District Court anytime, without any government immunity notice or exhaustion of remedies:

(1) 42 U.S.C. §1983: [First Amendment Retaliation]
• City and Individual Officer Liability,

(2) 42 U.S.C. §1983: [Race/Ethnic Discrimination: Fourteenth Amendment]
• City and Individual Officer Liability,

(3) 42 U.S.C. §1983: [Retaliation: Fourteenth Amendment]
• City and Individual Officer Liability, and

(4) False Claims Act. 31 U.S.C. §§ 3729–3733.
• Multiple Claims, including Retaliation
• City and Individual Officer Liability

3

These claims arise from retaliation and discrimination against Mr. Martinez for engaging in protected activities, including raising legal concerns regarding compliance with federal aviation law and FAA grant assurances, and complaints and objections to the way he is treated by the City Attorney and the Mayor's top political appointees.

Also, after completion of the proper notice and administrative exhaustion requirements, Mr. Martinez may assert his discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act [City and individual liability].

Mr. Martinez has potential claims for third-party interference with continuing business relationships and wrongful discharge in violation of public policy.

## FACTUAL BACKGROUND

### 1.  The Park Hill Golf Course Transaction

In May 2024, Mr. Martinez learned the Mayor's office intended to pursue a land transaction involving Airport property and the Park Hill Golf Course.

Early in the process, Mr. Martinez and other Airport officials raised concerns regarding the legality of the proposed transaction under the FAA's revenue diversion rules. Those rules prohibit the transfer of airport assets or value for non-airport purposes unless the airport receives fair market value in an arm's-length transaction.

Violations of these requirements can result in significant federal enforcement consequences, including loss of federal grant eligibility, withholding of federal funding, and civil penalties.

Mr. Martinez repeatedly raised these concerns with City leadership and explained the proposed transaction raised substantial FAA compliance issues.

### 2.  Fair Market Value: Appraisal Concerns

A central part of the FAA compliance analysis was whether the Airport property involved in the transaction would be transferred at fair market value.

Prior communications between the Airport and the FAA reflected a valuation of approximately $3.25 per square foot for the same Airport property. However, the City-controlled appraisals used in connection with the Park Hill transaction produced significantly lower valuations—first, about $1.70 per square foot, and later about $1.65 per square foot.

The City's appraisal represents roughly a 50 percent reduction from the previous value revealed to the FAA  by the Airport.

Because FAA grant assurances require airport sponsors to receive fair market value in an arm's-length transaction when airport property is transferred for non-airport purposes, Mr. Martinez raised concerns this discrepancy could create questions under the FAA's

4

revenue diversion rules.

Concerns regarding the structure of the transaction were heightened when public media reporting indicated that the Airport land would ultimately be transferred to the developer.

Following that report, the FAA contacted Airport leadership and complained about the transaction and its potential implications for future federal funding.

### 3.  Directive Concerning Disclosure to the FAA

During discussions regarding the structure of the transaction, Mr. Martinez understood that certain parts of the transaction involving the developer were not intended to be disclosed to the FAA.

Mr. Martinez and Airport leadership consistently maintained that the FAA must receive complete and accurate information regarding the transaction.

### 4.  Directive Concerning Documentation

During this period, discussions regarding the transaction also reflected awareness within the City Attorney's Office that it could raise significant FAA enforcement concerns.

On August 6, 2025, Acting City Attorney Katie McLaughlin telephoned Mr. Martinez and instructed him and his team not to retain records related to the real estate transaction, stating that documentation of the transaction could "scream treble damages to the FAA."

Ms. McLaughlin's statement reflects the City and the City Attorney's clear fear of liability under the False Claims Act.

Mr. Martinez memorialized the call with contemporaneous records reflecting the substance of the communication.

Mr. Martinez then instructed members of the Airport legal team and Mr. Washington to continue maintaining records relating to the transaction in the ordinary course of business.

### 5.  Conference Call with Outside Aviation Counsel

Based on Mr. Martinez's experience, legal analysis, and legal authority, we will show his analysis and advice on these issues were correct and necessary.

Mr. Steinberger and Mr. Martinez viewed the real estate transaction as posing significant revenue-diversion concerns for the City.

The transaction may not have been completed in an arms-length transaction at fair market value.

If the City engaged in any form of revenue diversion concerning the real estate deal, the liability exposure could be extraordinary.

5

Any transaction in which the City moves forward despite its in-house counsel's advice increases the chances of the FAA imposing greater scrutiny and penalties.

All transactions involving airport property and assets must be above board, transparent, proper, and transparent in all parts.

## 6. Key Lime Investigation Directive

The concerns raised by Mr. Martinez were not limited to the Park Hill transaction.

During the same period, City Attorney Miko Brown directed Mr. Martinez and Airport leadership to gather information on Key Lime Air's safety record.

Ms. Brown's directive followed actions taken by the Denver City Council affecting the airline's operations in connection with the airline's participation in immigration deportation flights.

Mr. Martinez understood that the information regarding the airline's safety record was being gathered in anticipation of possible communications with the FAA and in response to the possibility that the airline might raise concerns with federal regulators regarding the City's actions.

During these discussions, Ms. Brown said information regarding the airline's safety record could be used as justification for City Council's actions, contrary to their publicly stated reasoning, in her "back pocket" if the airline pursued a complaint with the FAA or FAA started an inquiry on their own.

Mr. Martinez raised concerns regarding this approach because invoking aviation safety issues in that manner could create the appearance that aviation regulatory considerations were used as a post-hoc justification for governmental actions unrelated to aviation safety.

Mr. Martinez also expressed concern this approach could create unnecessary risk in the Airport's dealings with federal regulators responsible for overseeing airline safety and airport compliance, as it could violate a Grant Assurance regarding discrimination against airlines.

Mr. Martinez's concerns were justified.

On December 31, 2025, the FAA submitted a letter to Mr. Washington expressing concerns regarding the City Council's denial of approval of a proposed airport lease for Key Lime Air Corporation at Denver International Airport. The FAA asserts: "Based on information currently available to the FAA, the stated rationale for the lease denial appears to be unrelated to airport operational, safety, or capacity considerations."

Because of the FAA's scrutiny of this transaction, any action having any hint of impropriety could create substantial financial liability for the City and the Airport.

6

### 7. Protected Activity and Retaliation

Mr. Martinez repeatedly raised concerns regarding FAA compliance, the valuation issues described above, and the legal risks associated with the proposed transaction.

On January 13, 2026, Mr. Martinez reported concerns regarding retaliation to the City's Office of Human Resources.

Following these protected activities, Mr. Martinez experienced a series of adverse employment actions, including:

- Denial of a recommended reclassification and salary change,

- Disparaging statements regarding his professional integrity,

- Interference with his continuing professional relationships,

- Accusations he was obstructing and sabotaging City initiatives,

- Exclusion from meetings involving matters within his responsibility,

- A negative performance evaluation following years of positive reviews,

- Threats to discipline him, and

- Repeated suggestions that the City may not be the right place for him

During meetings in early January 2026, City Attorney Miko Brown repeatedly demanded that Mr. Martinez "come clean" regarding his past advice on the Park Hill transaction and provide written statements to mayoral political appointees acknowledging that his earlier legal concerns had been wrong.

Mr. Martinez understood these demands as pressure to retract or disavow legal advice he had provided in good faith regarding FAA compliance risks. He declined to do so because he believed doing so would contravene his professional obligations as counsel for the Airport.

During the same discussions, Ms. Brown referenced an email Mr. Martinez had sent to Airport CEO Phil Washington about the Park Hill transaction. That email was labeled as a "Confidential Attorney Client-Communication", with confidential legal advice provided to Mr. Washington nearly a year and a half before Ms. Brown joined the City.

Ms. Brown acknowledged she had provided that communication to Jeff Dolan, the Mayor's Chief Strategist, who had not been involved in the underlying legal discussions about the transaction, internally with the Airport. Mr. Martinez was concerned that an attorney-client communication regarding legal advice on FAA compliance had been shared with a political official and then used to question his professional judgment.

Before these events, Mr. Martinez had consistently received strong performance feedback, including positive comments on his handling of the Park Hill transaction.

7

Mr. Martinez also has reason to believe that aspects of his performance evaluation were revised during the review process.

### 8.  Documentation

The matters described above are reflected in contemporaneous communications and records created by Mr. Martinez and other Airport personnel, including emails, memoranda, meeting notes, and related documents generated during the relevant period.

### 9.  Regulatory Considerations

Because several issues described above involve FAA grant assurances and potential revenue-diversion concerns, the City may wish to consult counsel experienced in FAA regulatory enforcement matters when evaluating these issues.

Mr. Martinez raised these concerns internally in his capacity as General Counsel for the Airport because FAA compliance obligations are taken extremely seriously by federal regulators and can have significant implications for airport sponsors receiving federal funding and maintaining eligibility for federal grants.

Mr. Martinez would have preferred that these matters be addressed internally carefully and transparently. Unfortunately, the circumstances described above resulted in retaliation and discrimination against him rather than resolving the underlying compliance concerns.

### CONCLUSION

Mr. Martinez is committed to resolving all issues.

Mr. Martinez has devoted nearly a decade of professional service to Denver International Airport. He would prefer to resolve these issues constructively and confidentially rather than through litigation.

At the same time, the issues described above involve matters of legal compliance, professional responsibility, retaliation, and discrimination that Mr. Martinez cannot disregard.

Mr. Martinez remains hopeful that these matters can be addressed constructively and without the need for litigation.

Respectfully,

*Steven Murray*

Steven L. Murray
MURRAY LAW, LLC

Counsel for Everett Martinez

8