UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:26-cv-01100-SKC-KAS

EVERETT BEN MARTINEZ,

       Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MICHIKO "MIKO" BROWN, DENVER CITY
ATTORNEY, in her official and individual capacities;
NICOLE DOHENY, CHIEF FINANCIAL OFFICER FOR
THE CITY, in her official and individual capacities; and
JEFF DOLAN, CHIEF STRATEGIST FOR THE MAYOR
OF DENVER, in his official and individual capacities,

       Defendants.

---

**DEFENDANT'S MOTION FOR ENTRY OF PROTECTIVE ORDER AND TO
SEAL CERTAIN PREVIOUSLY-FILED DOCUMENTS
[FILING REDACTED VERSION OF DKT. NO. 44,  PURSUANT TO DKT. NO.
43]**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

RULE 7.1.A CERTIFICATION ................................................................................................. 3

MATERIAL FACTS .................................................................................................................. 4

ARGUMENT ............................................................................................................................ 13

I.       THERE IS NO REASONABLE QUESTION THAT MR. MARTINEZ HAS AN
         ATTORNEY-CLIENT RELATIONSHIP WITH THE CITY ......................................... 13

II.      PLAINTIFF HAS A DUTY TO MAINTAIN AS CONFIDENTIAL THE
         INFORMATION HE LEARNED THROUGH REPRESENTATION OF HIS
         CLIENT, NO MATTER THE SOURCE OF THAT INFORMATION ........................... 14

III.     NO EXCEPTIONS PERMITTING PUBLIC DISCLOSURE APPLY ........................... 15

IV.      DEFENDANTS' REQUESTED RELIEF IS NECESSARY TO PREVENT
         CONTINUED BREACH OF THE RULE OF CONFIDENTIALITY ............................ 16

V.       PLAINTIFF'S VIOLATION OF HIS DUTIES TO HIS CLIENT, AND
         PLAINTIFF'S COUNSEL'S PARTICIPATION IN THESE BREACHES, ARE
         SO FLAGRANT AND FRIVOLOUS THAT THEY SHOULD BE REQUIRED
         TO PAY ATTORNEYS' FEES AND COSTS ............................................................... 18

CONCLUSION ......................................................................................................................... 20

CERTIFICATE OF COMPLIANCE ........................................................................................ 1

i

# TABLE OF AUTHORITIES

**CASES**

*Affiniti Colo., LLC v. Kissinger & Fellman, P.C.*,
  461 P.3d 606 (Colo. App. 2019) ............................................................................... 15

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................................... 18

*Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct.*,
  718 P.2d 1044 (Colo. 1986) ..................................................................................... 15

*Obeslo v. Empower Cap. Mgmt., Inc.*,
  85 F.4th 991 (10th Cir. 2023) .................................................................................. 18

*People v. Bennett*,
  810 P.2d 661 (Colo. 1991) ....................................................................................... 14

*People v. Isaac*,
  470 P.3d 837 (Colo. 2016) ................................................................................. 14, 15

*People v. Morley*,
  725 P.2d 510 (Colo. 1986) ....................................................................................... 14

*People v. Trujillo*,
  144 P.3d 539 (Colo. 2006) ....................................................................................... 16

*Rademacher v. Greschler*,
  455 P.3d 769 (Colo. 2020) ....................................................................................... 17

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ................................................................................................... 1

*Wesp v. Everson*,
  33 P.3d 191 (Colo. 2001) .................................................................................... 16, 19

**STATUTES**

28 U.S.C. § 1927 ............................................................................................................ 18

Colo. Rev. Stat. § 13-90-107 ......................................................................................... 17

**RULES**

Colorado Rules of Professional Conduct 1.13 ............................................................... 16

Colorado Rules of Professional Conduct 1.6 .......................................................................... passim

Colorado Rules of Professional Conduct 8.4 ............................................................................... 18

Colorado Rules of Professional Conduct Preamble ..................................................................... 13

As the United States Supreme Court held, "[t]he attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The Court continued:

> Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated last Term in *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980): "The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." This rationale for the privilege has long been recognized by the Court, see *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

*Id.* In addition to the undisputed protection applied to attorney-client privileged communications (and, relatedly, work product), the Colorado Rules of Professional Conduct, Rule 1.6(a), extends client protections to information a lawyer learns in the course of representation of a client: "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent…"

> The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work-product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or

1

> otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. <u>The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.</u> A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.

*Id.*, cmt. 3 (emphasis added). There are limited exceptions permitting (but not requiring) attorney disclosure of this type of information, such as to "establish a claim…of the lawyer in a controversy between the lawyer and the client…" *Id.* 1.6(b)(6). However, in a "judicial proceeding," "the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it <u>and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable</u>." *Id.*, cmt. 16.

There is no question, then, that "[t]he confidentiality rule" under Rule 1.6 requires a significant amount of information publicly filed in this case to be sealed and that Plaintiff and his counsel must be prohibited from disclosing it to third parties, such as the media. Plaintiff's counsel has not been entirely clear on the bases on which they and their client believe they have free reign to publicly reveal this information as they have done to date, but their arguments <u>appear</u> to be: (1) Plaintiff had an attorney-client relationship only with the Department of Aviation (which he refers to as the "Airport"), not the City, so nothing related to the City is subject to protection; (2) even if he did have such a relationship with the City and as to information he's disclosed related to his admitted attorney-client relationship

2

with the Department of Aviation, he is still permitted to disclose publicly such information because (a) the "confidentiality rule" of Rule 1.6 is "so broad" that he can't be expected to identify what should be protected but, rather, that burden should fall to Defendants as "their job" to do through their lawyers in this case, (b) the crime-fraud exception applies, and (c) he is pursuing a lawsuit (Rule 1.6(b)(6)). As explained below, all of these fail and fail so blatantly that Defendants should be entitled to their outside attorneys' fees and costs for having to address Plaintiff's and Plaintiff's counsel's frivolous and bad-faith actions.

Additionally, Defendants, the City and County of Denver ("the City"), Michiko "Miko" Brown, Nicole Doheny, and Jeff Dolan, respectfully request that the Court enter the attached protective order to protect against continued disclosure of this information in future filings as well as in discussions with third parties, including, but not limited to, the media. On the same bases, Defendants also request that the Court retroactively seal the Complaint, the many Amended Complaint documents, and Plaintiff's [first] Motion for Temporary Restraining Order (Dkt. Nos. 1, 8, 10, 11) to protect the included privileged and confidential information in those documents from further use and disclosure (requiring Plaintiff to then file redacted versions on the public docket).

## RULE 7.1.A CERTIFICATION

Defendants' counsel conferred with Plaintiff's counsel regarding the relief requested in this motion over telephone on April 1 and 7, 2026, and in further detail

3

through emails throughout that entire period. In the April 1 call, Plaintiff's counsel said that the confidentiality rule of 1.6 is "so broad" that he can't be expected to identify everything that may fall under its protection, stating "I am not going to do your job for you." Thereafter, per Plaintiff's counsel's request, Defendants worked dozens of hours to highlight (in four colors by category) hundreds of pages of publicly-filed documents to identify privileged and confidential information (which, on their face are substantially similar, but had nuanced differences that required careful review of each of them). Once provided to Plaintiff's counsel, they refused to go through the highlighted lines or, at least to do so within a reasonable time frame, stating that they don't work on Defendants' counsel's timeline or pursuant to Defendants' "demands," were not going "to help the Defendants write their motion," and that "Defendant's [sic] position imposed an undue burden on the Plaintiff."

## MATERIAL FACTS

1.      The City and County of Denver owns the Denver Municipal Airport System and the power to operate, maintain, and control the Airport System is vested in the City's Department of Aviation. (Ex. E, Torres Decl. ¶ 4.)[1] Cristal Torres previously served as the Deputy City Attorney in the City Attorney's Office ("CAO") until 2018, and then served as the Executive Vice President and Chief of Staff at the Airport until she left employment with the City in 2023. (*Id.* ¶¶ 1-3.)

---

[1] Defendants attach as an appendix to this motion a chart of "who is who" of those who appear in Plaintiff's complaint, this motion, and their roles, and also indicating who provided the attached declarations to assist with navigating those as well.

4

Because of the two separate roles in which she served, Ms. Torres provides a succinct yet helpful explanation of this Municipal Airport System. (*See generally id.*)

2. Mr. Martinez <u>was hired and employed by the CAO</u> (also known as the City's Department of Law) as an <u>Assistant City Attorney</u> at all pertinent times. (Ex. F, Bronson Decl. ¶ 4.) The City's Charter (*id.* & Ex. 1) establishes the responsibilities for the City Attorney and Department of Law, including section 6.1.3, which says (among other things):

> The Department of Law shall exercise all functions of the City and County of Denver as to: (A) Representing the City and County of Denver, or any officer acting in his or her official capacity…in all civil litigation where the City and County of Denver, or said officer or said employee has been made a party; (B) Serving as counsel and legal advisor of the Mayor, the City Council or any committee or member thereof, the Auditor and heads of all departments, boards, commissions and officers concerning any legal matters affecting the City's interest…

3. The CAO assigned him to the City's Department of Aviation to be part of "DEN Legal" (*id.* ¶ 2), which Mr. Martinez refers to as the "Airport" in his pleadings.[2] All members of the CAO, including Mr. Martinez, represent the City and need to put the City's interest as a whole above individuals and individual departments. (*Id.* ¶ 10; *see also* Torres Decl. ¶ 9 ("standard protocols and procedures in place at the City Attorney's Office reinforced that the City was the client" and providing specific examples).)

---

[2] "DEN Legal," "the Department of Aviation," and "the Airport" are somewhat used interchangeably. However, only the CAO lawyers are part of DEN Legal and the Department of Aviation is broader than just lawyers and includes all Department leadership. The "Airport" generally speaking is the larger universe that is DIA.

4.      As members of the CAO's Office, the DEN Legal team attended all CAO staff meetings and department-wide training, in which the CAO "continuously reinforced that while each Section Director (and their teams) supported certain City departments…the City was the client and that [their] legal duty was to the City, not to an individual person or to an individual City department." (Torres Decl. ¶ 7.)

5.      Kristin Bronson, former City Attorney, promoted Mr. Martinez from Assistant City Attorney to Assistant City Attorney—Division Assistant Director (aka "Section Supervisor") for the Department of Aviation, and then to Assistant City Attorney—Division Director for the Department of Aviation in 2022. (Bronson Decl. ¶ 2.) She permitted Mr. Martinez to use the working title "General Counsel," but his position still had the same classification as every other Division Director for the City in the CAO. (*Id.* ¶ 9; Ex. G, Smith Decl. ¶ 7.)

6.      Ms. Torres was serving as the Executive Vice President and Chief of Staff at the Airport when Mr. Martiez was promoted to General Counsel. (Torres Decl. ¶ 12.) He "became a member of the senior leadership team for the City Attorney's Office, reported directly to the Deputy City Attorney, and maintained his status as a career service employee." (*Id.*) "As a member of the City Attorney's Office senior leadership team and in his capacity as the Airport General Counsel, Mr. Martinez attended regular standing meetings with Airport executives to advise on legal matters and strategy as well as liaise with the City Attorney's Office." (*Id.*)

6

7. Mr. Martinez admits he has an attorney-client relationship with the Airport. (First. Am. Compl. ("FAC") ¶ 216 ("Throughout Martinez' career as an Airport attorney, he has always operated and performed his duties with the sound understanding that he has an attorney-client relationship with the Airport.").) However, Mr. Martinez denies that he has an attorney-client relationship with the City. (*Id.* ¶ 20.)

8. Mr. Martinez's attempt to separate the City and the Department of Aviation is wrong: the City owns the Airport and the Department of Aviation is merely one of many City departments to which Assistant City Attorneys are assigned. (*See generally* Torres Decl.; Ex. H, Washington Decl. ¶ 2; Bronson Decl. ¶¶ 5-6.) Even the City's website makes this clear. (*See* https://denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/City-Attorneys-Office (last visited Apr. 10, 2026) ("The City Attorney's Office, led by Miko Brown, serves as the legal advisor to the Mayor, City Council, City Auditor, City Clerk and Recorder, the City's elected officials, and all City departments and agencies."); *id.* (DEN Legal is a tab underneath the heading "Learn more about our sections and how to contact us").)

9. Until recently, Mr. Martinez always acted in manner that made clear he knew his attorney-client relationship was with the City, including memoranda from him to the Mayor labeled as "CONFIDENTIAL ATTORNEY-CLIENT PRIVILEGE." (*See, e.g.*, Ex. K, Steinberger Decl. ¶¶ 6-8 & Exs. 6-7, & Ex. 3; Ex. I,

7

Brown Decl. ¶ 13 & Exs. 1-7; Ex. O, Dolan Decl. ¶ 3 & Exs. 1-2 (emails sent <u>only to</u>

<u>Dolan</u> marked as "CONFIDENTIAL: Attorney-Client Communication" and

"Attorney-Client Communication," respectively).)



(Brown Decl. ¶ 9 & Ex. 2 (emphasis added).)

10.    Defendants' retained outside counsel ethics advisor finds Mr.

Martinez's own job posting to be the compelling evidence of his attorney-client

relationship with the City. (Ex. J, Gleason Decl. ¶ 16.) It states:

> The Denver City Attorney's Office is now seeking to recruit a new
> General Counsel to oversee all legal functions at the airport…. The GC
> is also a member of the executive management team of the CAO and is
> a strategic partner in all CAO initiatives and projects, helping develop
> and ensure compliance with all CAO policies and practices….

(*See* Pl.'s Mot. for Prelim. Inj., Ex. 12 at 6, Dkt. No. 25.) The posting identifies as

"key responsibilities," among others, implementing the pillars of the CAO's strategic

plan and "[a]dvis[ing] the City Attorney, Deputy City Attorney, and DEN regarding

all aspects of civil litigation and risk management involving DEN." (*Id.* at 6-7.)

11.    Mr. Martinez hired and supervised Kevin Cain as an Assistant

Director for the Department of Aviation. (Ex. L, Cain Decl. ¶¶ 1-2.) Mr. Cain's job

posting states: "Clients include the Mayor, City Council, all other elected and

appointed officials, and all city agencies, departments, boards, commissions, and

8

employees" and that the position "provides legal counsel and representation to City officers and employees." (*Id.* ¶ 3 & Ex. 1; *see also* Steinberger Decl. ¶¶ 2-3 & Ex. 1.)

12.    Mr. Martinez's attorney colleagues assigned to the Department of Aviation agree that they are part of the CAO, that their duty of loyalty lies with the City as their client, and that they have attorney-client relationships with the City. (Cain Decl. ¶¶ 1, 3-4; Steinberger Decl. ¶¶ 3-4.)

13.    Phil Washington, Executive Director and CEO of the Department of Aviation, knows Mr. Martinez is a CAO attorney who provides legal counsel to City officials beyond the Department, and expects him to maintain attorney-client privileged communication and confidential information. (Washington Decl. ¶¶ 1-3.)

14.    In his role as General Counsel, Mr. Martinez has performed legal work for the City, including the Department of Aviation, and provided legal advice to the City, City officials, and the Department of Aviation's executive team. (Washington Decl. ¶ 2; Bronson Decl. ¶¶ 10- 11 (examples of Mr. Martinez advising City officials in executive sessions); Smith Decl. ¶ 8 (describing Mr. Martinez's communications regarding legal matters to CAO members outside of the Department of Aviation); Ex. M, Meleandez Decl. ¶¶ 2-3; Ex. N, Biel Decl. ¶ 4; Dolan Decl. ¶¶ 2-3 & Exs. 1-2; Brown Decl. ¶¶ 9-13; Ex. P, Garnett Decl. ¶¶ 4-5.)

15.    Mr. Martinez admits this in his own pleadings. (FAC ¶ 54 (█████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ ); *id.* ¶ 134 ("████████████████████

████████████████████████████████████████████████████████

████████ ); *id.* ¶¶ 165-67 (████████████████████████████

████████ ).)

16.     On March 18, 2026, Mr. Martinez publicly filed his complaint, with

nothing redacted and no request to file any portions under seal. It is full of

confidential and privileged information relating to his representation of the City.

(*See generally* Ex. A, Compl., Dkt. No. 1 (Defendants provided this highlighted

version to Plaintiff in conferral with the explanation of the highlighting colors:

purple (attorney-client privilege, Dept. of Aviation); pink (confidential, Dept. of

Aviation); green (attorney-client privilege, City); and yellow (confidential, City).)[3]

17.     From March 17-19, Mr. Martinez and his counsel publicized the

lawsuit. (████████████ ████████████████████████████████

████████████████████████ ████████████████████████

████████████████████████████████████████████████████████

---

[3] With the highlighting, Defendants are not adopting what is an incorrect
distinction between privilege with the City and privilege with the Department of
Aviation. The Department of Aviation is part of the City, so all of these
communications are protected as privileged with the City. Defendants used these
differences for conferral purposes only in an attempt to narrow the issues given
Plaintiff's admission that he is an attorney for the Department of Aviation. Further,
there are areas that overlap that can't be captured by the highlighting. All portions
designated as privileged, even if found to be not privileged, are still confidential
under Rule 1.6. Finally, where Defendants highlight something, they are not
agreeing that the statement is true or that something in fact occurred; it accepted
the allegations as true for this purpose only, as the Court would do.



18.     Mr. Martinez's counsel even went on a radio program to talk about it.

19.     On March 23, Mr. Martinez publicly filed a notice of filing an amended

complaint, with the amended complaint attached as well as a redlined copy; these

documents too were full of confidential information.

20.     On March 24, outside ethics counsel for the City, John Gleason, sent a

cease-and-desist letter to Plaintiff's counsel, stating (1) Mr. Martinez has an

attorney-client relationship with not just the Department of Aviation, but with the

City; (2) Mr. Martinez has a duty under the Colorado Rules of Professional Conduct

11

to not reveal confidential and privileged information related to his representation; and (3) filing the Complaint and Amended Complaint publicly, without redaction, and without sealing, breaches that duty. (Gleason Decl. ¶ 5 & Ex. 3.) Mr. Gleason's letter explained that Mr. Martinez could still include this information in pursuing his claims, but that the unredacted filings need to be sealed, and confidential information needed to be redacted if the filings were public. (*Id.*)

21.     Plaintiff's counsel responded to Mr. Gleason's letter, rejecting Mr. Gleason's assertions that any information has been disclosed in violation of Plaintiff's ethical obligations. (*Id.* ¶¶ 5, 10 & Ex. 4.) Plaintiff's counsel stated, "The Complaint does not disclose the substance of any privileged legal advice" but then continues, "rather, <u>it describes Mr. Martinez's conduct, objections, and the legal risks he identified in the course of performing his duties</u>." (*Id.* (emphasis added).) "To the extent you contend that additional measures should have been taken with respect to filing procedures, that is a matter appropriately addressed through the Court's ordinary procedures, including protective orders if warranted." (*Id.*)

22.     ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████ This motion was denied for both procedural and form issues on March 31, 2026 (Dkt. No. 17), but still remains on the public docket.

## ARGUMENT

"Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves." Colo. RPC Preamble, cmt. 12.

Both Mr. Martinez and Plaintiff's counsel are in direct violation of their ethical and legal obligations. <u>Even if</u> Mr. Martinez could somehow successfully argue he had no attorney-client relationship with the City, that does not excuse his and his counsel's extensive public disclosure of privileged and confidential information from the Department of Aviation (identified in Exs. A-D in purple and pink highlighting). Defendants are entitled to their requested relief.

## I.    THERE IS NO REASONABLE QUESTION THAT MR. MARTINEZ HAS AN ATTORNEY-CLIENT RELATIONSHIP WITH THE CITY

Despite stating he is counsel for the Airport (owned by the City), Mr. Martinez claims to lack knowledge of an attorney-client relationship with the City. (*See* FAC at ¶¶ 47, 216.) The record evidence, much of which includes Mr. Martinez's own written memoranda and emails <u>addressed to individuals outside the Department of Aviation labeled as "Confidential" and "Attorney-Client Privilege"</u> disproves, without question, Mr. Martinez's claim. (*See* ¶ 9 above.) Mr. Martinez even attaches to his TRO and preliminary injunction motions his job posting, which identifies as one of his "key responsibilities" "[a]dvis[ing] the City Attorney, Deputy

13

City Attorney, and DEN regarding all aspects of civil litigation and risk management involving DEN" (Dkt. No. 25, Ex. 12 at 6-7).

An attorney-client relationship "is 'established when it is shown that the client seeks and receives the advice of the lawyer on the legal consequences of the client's past or contemplated actions.'" *People v. Bennett*, 810 P.2d 661, 664 (Colo. 1991) (quoting *People v. Morley*, 725 P.2d 510, 517 (Colo. 1986)). The relationship can be inferred from the parties' conduct, and the proper test is a "subjective one," with an important factor being whether the client believes that the relationship existed. *Id.* Based on the evidence, there is no reasonable basis for Mr. Martinez to contend he was not aware he had an attorney-client relationship with the City nor that the City did not have a reasonable basis to believe he was its lawyer.

## II. PLAINTIFF HAS A DUTY TO MAINTAIN AS CONFIDENTIAL THE INFORMATION HE LEARNED THROUGH REPRESENTATION OF HIS CLIENT, NO MATTER THE SOURCE OF THAT INFORMATION

Lawyers have an ethical and professional obligation to their clients to not reveal information relating to the representation unless the client gives informed consent. Colo. RPC 1.6(a) & cmt. 3. In *People v. Isaac*, the Court held that a lawyer's "most important ethical obligations are those owed to clients" and "[b]y disclosing confidential information, [the respondent] subverted that duty and thereby chipped away at one of the most fundamental elements of the attorney-client relationship: clients' trust in lawyers to protect their interests and preserve their confidential

14

information." 470 P.3d 837, 843 (Colo. 2016) (emphasis added).[4] The Colorado Rules of Professional Conduct require a lawyer make reasonable efforts to prevent the unauthorized disclosure of, or unauthorized access to, "information relating to the representation of a client." Colo. RPC 1.6(c). And, if needed for judicial proceedings to pursue their own claims under Colo. RPC 1.6(b)(6), to file such information "in a manner that limits access to the information…and appropriate protective orders or other arrangements should be sought <u>by the lawyer to the fullest extent practicable</u>." *Id.*, cmt. 16. (emphasis added); Gleason Decl. ¶ 5 (explaining that the Rules of Professional Conduct do not preclude Mr. Martinez from pursuing his claims but require him to file protected information under seal).

All information Defendants have highlighted in Exhibits A-D is information covered under Rule 1.6's confidentiality rule. Mr. Martinez has blatantly violated his ethical obligations under Colorado law and his counsel have assisted him.

## III. NO EXCEPTIONS PERMITTING PUBLIC DISCLOSURE APPLY

Rule 1.6(b) provides exceptions to the duty of confidentiality, but none of them apply here. For example, a governmental entity can waive the rule of confidentiality, allowing for disclosure, but only through its agents and individuals empowered to act on its behalf. *Affiniti Colo., LLC v. Kissinger & Fellman, P.C.*, 461

---

[4] *See also Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct.*, 718 P.2d 1044, 1047 (Colo. 1986) (the obligation to hold inviolate attorney-client confidences "facilitates the full development of facts essential to proper representation of the client" and "encourages the general public to seek early legal assistance").

P.3d 606, 614 (Colo. App. 2019) Here, nobody has waived this protection. (*See*
Washington Decl. ¶ 3; Brown Decl. ¶ 15; Cain Decl. ¶ 7; Biel Decl. ¶ 4; Steinberger
Decl. ¶ 12; Garnett Decl. ¶ 6; Dolan Decl. ¶ 6; Meleandez Decl. ¶ 3.)

In conferral, Plaintiff's counsel referenced the "crime-fraud" exception as a
possible justification for violation of confidentiality. This exception is inapplicable,
even if each of Mr. Martinez's allegations are taken as true. Under the crime-fraud
exception, a lawyer may disclose information about a client to the extent necessary
to enable affected persons or appropriate authorities to prevent the client from
committing a crime that has not yet been committed. *See* Colo. RCP 1.6(b)(2), cmt.
6A. But Mr. Martinez alleges criminal conduct that has, according to him, already
occurred, making this "exception" inapplicable. (*See* Gleason Decl. ¶ 18.)[5]

## IV.    DEFENDANTS' REQUESTED RELIEF IS NECESSARY TO PREVENT CONTINUED BREACH OF THE RULE OF CONFIDENTIALITY

Although there is a presumption of public access in judicial proceedings, that
does not apply to attorney-client information protected under the rule of
confidentiality in Rule 1.6. *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001) (the
tension between the attorney-client privilege and the fact-finding process is "the
price that society must pay for the availability of justice to every citizen, which is
the value that the privilege is designed to ensure"); *People v. Trujillo*, 144 P.3d 539,

---

[5] Colo. RPC 1.13(c) is also inapplicable as Mr. Martinez has not done anything
"necessary to prevent substantial injury to the organization"; pursuing personal
claims for monetary and injunctive relief for himself does not qualify. (*Id.* ¶ 19.)

542 (Colo. 2006) (even an *in camera* disclosure to the court is still a form of disclosure that is discouraged as it could have a "chilling effect" on attorneys and their clients); *see also* Colo. RPC 1.6, cmt. 16 requiring sealing of such information in judicial proceedings. Indeed, Colorado has codified that the privilege and confidentiality of the attorney-client relationship does not give way in a judicial proceedings. *See* Colo. Rev. Stat. § 13-90-107(1) ("There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate…"); *id.* § 13-90-107(1)(b) ("An attorney…shall not be examined without the consent of the attorney's…client as to any communication made by the client to the attorney…or to any advice given to the client by the client's attorney…").

Once confidential attorney-client information is disclosed, the harm is immediate and irreversible. *Rademacher v. Greschler*, 455 P.3d 769, 773 (Colo. 2020) (an erroneous production of attorney-client privileged information and communications cannot be cured on appeal because "the damage would occur upon disclosure"). The City has been irreparably harmed by Mr. Martinez's and his counsel's failure to uphold their professional and ethical obligations. Although the harm cannot be reversed, it can at least be curbed by sealing the documents that are currently on public record, and by ordering the restriction of portions of future filings to only the Court and the parties. This is the least restrictive method of protecting confidential information, while also allowing Mr. Martinez to pursue his claims, just as the Colorado Rules of Professional Conduct contemplate.

17

**V.     PLAINTIFF'S VIOLATION OF HIS DUTIES TO HIS CLIENT, AND PLAINTIFF'S COUNSEL'S PARTICIPATION IN THESE BREACHES, ARE SO FLAGRANT AND FRIVOLOUS THAT THEY SHOULD BE REQUIRED TO PAY ATTORNEYS' FEES AND COSTS**

The Court can require any attorney who multiplies the proceeding unreasonably and vexatiously to pay excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. In the Tenth Circuit, sanctions under section 1927 do not require subjective bad faith, but rather any conduct, viewed <u>objectively</u>, that manifests either intentional or reckless disregard of the attorney's duties to the court. *Obeslo v. Empower Cap. Mgmt., Inc.*, 85 F.4th 991, 1005 (10th Cir. 2023). Further, the Court, under its inherent authority, can also require that Plaintiff himself reimburse Defendants' fees. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-48 (1991) (affirming award of sanctions against a party, recognizing courts' "inherent power to impose sanctions for the bad-faith conduct," including requiring a party to pay attorneys' fees).

Plaintiff and his counsel have both flagrantly and objectively acted in reckless and intentional disregard of Colorado law. Rule 1.6 expressly places the burden on Plaintiff and his counsel to take all steps necessary to protect the confidential information they publicly disclosed here. *See* Colo. RPC, cmt. 16. Plaintiff's counsel, who did the filings and went on a radio program to discuss this confidential information, has acted just as improperly as Plaintiff. *See* Colo. RPC 8.4 ("It is professional misconduct for a lawyer to: (a) violate or attempt to violated

18

the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another…”).

Further, the burden of establishing that an exception applies to the confidentiality rule lies with the party asserting the exception. *Wesp*, 33 P.3d at 197. And though Plaintiff's counsel acknowledged the breadth of the rule of confidentiality, he told <u>Defendants</u> to identify the confidential information, stating, “I am not going to do your job for you.” Instead of upholding <u>their</u> duties, Plaintiff and Plaintiff's counsel took the bad faith and frivolous position that required the City and its outside counsel to spend dozens of hours marking up the publicly-filed complaints and TRO motion, and briefing this issue.

As further proof of their intentional and frivolous breaches, Plaintiff's counsel responded to Mr. Gleason's cease-and-desist letter, agreeing that privileged and confidential information is “appropriately addressed through the Court's ordinary procedures, including protective orders if warranted.” (Gleason Decl. ¶¶ 5, 10 & Ex. 4.) Yet, within days, ███████████████████████████████████ ███████████████████████████ Plaintiff and Plaintiff's counsel have forced Defendants to litigate this issue despite having no good-faith basis on which to argue this information is not subject to protection.

By refusing to take any steps to protect his client's information, Mr. Martinez put his own needs, unnecessarily, before the needs of his client. Mr. Martinez and

his counsel can, and are required to, pursue his claims while also protecting his client's confidential information. They simply chose not to bother.

Because of Plaintiff's blatant and baseless disclosure of this information, which can be described as nothing less than bad faith and the taking of a frivolous position, Defendants respectfully request the Court grant Defendants their reasonable outside counsel attorneys' fees and costs for the extensive conferral with Plaintiff on these issues, preparing this briefing and exhibits, and preparing for and attending the Court's upcoming hearing on this motion.[6] Unfortunately, even this reimbursement will only partially compensate Defendants given the significant number of hours City personnel have had to put into addressing these issues; taking key resources from a municipality that is already struggling financially. Plaintiff's and Plaintiff's counsel's misconduct is ultimately harming the hundreds of thousands of constituents of the City and County of Denver.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court enter the proposed Protective Order, which provides in detail the specific relief requested.

---

[6] If the Court agrees Defendants are entitled to a reasonable award of fees, Defendants will submit evidence of said fees. Defendants also request that the Court permit them to recover their fees for preparing the documents and filings related to recovery of their fees in the event the parties cannot reach agreement.

Dated: April 15, 2026.                  Respectfully submitted,


                                        *s/Jessica G. Scott*

                                        Jessica G. Scott
                                        Hannah P. Chapple
                                        Wheeler Trigg O'Donnell LLP
                                        370 Seventeenth Street, Suite 4500
                                        Denver, CO 80202
                                        Telephone: 303.244.1800
                                        Email: scott@wtotrial.com
                                                chapple@wtotrial.com

                                        Attorney for Defendants

21

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that no portion of this filing was drafted by generative artificial intelligence.

Dated: April 15, 2026.                          Respectfully submitted,


*s/Jessica G. Scott*
Jessica G. Scott
Hannah P. Chapple
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Email: scott@wtotrial.com
        chapple@wtotrial.com

Attorneys for Defendants

1

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on April 15, 2026, I electronically filed the foregoing **DEFENDANT'S MOTION FOR ENTRY OF PROTECTIVE ORDER AND TO SEAL CERTAIN PREVIOUSLY-FILED DOCUMENTS [FILING REDACTED VERSION OF DKT. NO. 44,  PURSUANT TO DKT. NO. 43]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- Steven Lee Murray
  steven@smurraylaw.com, stmlegal@msn.com

- Brandon S. Armitage
  brandon@sobel.law

- Andrea F. Sobel
  andrea@sobel.law

*s/Jessica G. Scott*

1