IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-01100-SKC-KAS

EVERETT BEN MARTINEZ,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MICHIKO BROWN, Denver City Attorney in her official capacity also known as Miko
Brown and in her individual capacity,
NICOLE DOHENY, Chief Financial Officer for the City in her official capacity and in her
individual capacity, and
JEFF DOLAN, Chief Strategist for the Mayor of Denver in his official capacity and in his
individual capacity,

    Defendants.
_____

**MINUTE ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

        This matter is before the Court on Defendants' Unopposed Motion to File Further
Briefing on Defendants' Motion for Protective Order and Attached Exhibits Provisionally
Under Seal and to Restrict Public Access from Upcoming Hearing on Said Motion [#51]
(the "Motion"). Plaintiff filed a Response [#72], and Defendants filed a Reply [#73].

        Though conferral emails indicate that this Motion is unopposed, for
incomprehensible reasons, Plaintiff's briefing indicates otherwise. *Compare Defs.' Ex. A*
[#73-1] at 2-3 & *Defs.' Ex. B* [#73-2] at 2-3 *with Response* [#72].

        The Court will hold a hearing on May 4, 2026, at 1:30 p.m. to hear argument on
Defendants' Motion for Protective Order [#44]. *See Min. Order* [#36]. The Motion for
Protective Order seeks to restrict from public access several court filings—including
Plaintiff's Complaint [#1]—which Defendants contend contain extensive attorney-client
privileged and confidential communications.

        In the Motion [#51], Defendants seek leave for the parties to provisionally file
briefing and supporting materials related to the Motion for Protective Order [#44] under
Level 1 restriction, which limits access to the parties and the Court. *See* D.C.COLO.LCivR
7.2(b). Defendants request that the restriction remain in place pending a ruling on
Defendants' Motion for Protective Order [#44]. *Motion* [#51] ¶ 4. Additionally, Defendants

ask that the May 4th hearing be closed to the public because attorney-client privileged and confidential information "will be discussed in detail at the hearing[.]" *Id*. ¶ 5. Defendants add that that the hearing's transcript would become "publicly available, in whole or in part, if the Court were to rule against Defendants [on their Motion for Protective Order]." *Id*.

Despite having agreed to Defendants' requests in conferral emails, Plaintiff now states that he did not agree to closure of the courtroom during the May 4th hearing; he only "agreed that Defendants could file the underlying motion under restriction." *Response* [#72] at 2. In opposition to closure, he argues that Defendants have not overcome the presumption of public access to court proceedings. *Id*.

Provisional Restriction of Court Filings

First, the Court addresses the provisional filing of Motion for Protective Order briefing and supporting materials under Level 1 restriction. "[S]ecret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). Under D.C.COLO.LCivR 7.2(a), "[u]nless restricted by statute, rule of civil procedure, or court order, the public *shall* have access to all documents filed with the court[.]" (emphasis added). This means that the mere "fact that the parties agree to restriction or that there is a Stipulated Protective Order in place does not dictate the Court's decision or change its analysis, as the right of access belongs to the public, which is not a party to the parties' agreement or protective order." *E.E.O.C. v. Columbine Health Sys., Inc.*, No. 15-cv-01597-MSK-CBS, 2017 WL 4163354, at *12 (D. Colo. Sept. 19, 2017).

Documents filed in this District are presumptively available to the public, "but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure." *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158 (D. Colo. 2015) (citing *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997)). Here, the parties' briefing and supporting materials, docketed at [#44, #53-54, #59], contain abundant communications and other information that Defendants assert are attorney-client privileged, confidential communications. The May 4th hearing will help the Court adjudicate Defendants' Motion for Protective Order [#44]. Because the asserted privilege is in dispute and requires Court intervention, provisional sealing of the identified court filings will best preserve and protect "[t]he critical role that attorney-client privilege plays in facilitating the administration of justice[.]" *Siedle v. Putnam Invs.*, 147 F.3d 7, 10-11 (1st Cir. 1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

Accordingly, the Court **grants** the Motion [#51] to the extent it seeks leave to provisionally file Motion for Protective Order briefing and supporting materials under Level 1 restriction. The Court will reassess the restriction's propriety when it adjudicates Defendants' Motion for Protective Order [#44].

2

Public Access to May 4, 2026 Hearing

Next, the Court addresses the request to restrict the public's access to the May 4, 2026 hearing. Open access to court proceedings lies at the heart of democracy. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Press-Enterprise Co. v. Superior Ct. ("Press-Enterprise I")*, 464 U.S. 501, 509 (1984) (quoted in *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 636 (D. Colo. 2010)). "The public has a fundamental interest in understanding the disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act honestly." *Huddleson*, 270 F.R.D. at 636 (citing *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980)). The right to access to court proceedings does not just rest in common law; it is also rooted in the First Amendment. *See Huddleson*, 270 F.R.D. at 636 (collecting appellate decisions).

The Court applies a two-part test announced in *Press-Enterprise Company v. Superior Court ("Press-Enterprise II")*, 478 U.S. 1, 8-9 (1986) and applied in *Courthouse News Service v. New Mexico Administrative Office of Courts*, 53 F.4th 1245, 1246 (10th Cir. 2022). First the Court must determine whether a right of public access attaches to a hearing on a motion for protective order, which seeks to protect attorney-client privileged and confidential communications. *See Courthouse News Serv.*, 53 F.4th at 1264. To make that determination, the Court considers whether such a proceeding has "historically been open to the press and general public" and whether public access "play[s] a 'significant positive role in the functioning of the particular process in question.'" *Id*. (quoting *Press-Enterprise II*, 478 U.S. at 8-9).

Defendants argue that "hearings on motions for protective orders are generally not subject to the same First Amendment right of access that applies to trials and other judicial proceedings, with the key distinction being that discovery materials and disputes typically fall outside of the tradition of public access to judicial proceedings." *Motion* [#51] at 4 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32-33 (1984)); *Reply* [#73] at 10. While Defendants concede that the May 4th hearing does not concern discovery, they argue that the logic of *Seattle Times* applies because "the restriction sought would not be on a traditionally public source of information, as the general public would never have access to attorney-client privileges or confidences," and the public does not have a "historical right" to access privileged or confidential information. *Reply* [#73] at 10-11 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)) (internal quotation marks and other citations omitted).

In response, Plaintiff argues that the First Amendment bars the hearing's closure for three reasons: (1) Plaintiff challenges government retaliation for protected First-Amendment conduct and suppression of protected speech and petition activity"; (2) "the Defendants are public officials" and the public holds "a particularly strong interest" in "attend[ing] proceedings involving government conduct"; and (3) the case concerns Denver International Airport (and its former General Counsel), which "operates on public land" and "is funded in substantial part through federal grant assurances." *Response* [#72] at 11-12.

3

While the Court agrees with Defendants that the public does not have a historical right to access privileged or confidential information, the public has a fundamental interest in understanding the dispute that will be heard on May 4, 2026; namely, whether Defendants' request to restrict multiple court filings—including the Complaint—in whole or in part are based on legitimate assertions of privilege and confidentiality. Indeed, Defendants summarize the issues to be heard as follows: "(1) [whether] Plaintiff had an attorney-client relationship with the City, (2) whether the identified information in his public filings is protected by Rule 1.6's rule of confidentiality (both retroactively and proactively), and (3) whether any of Rule 1.6's exceptions apply." *Reply* [#73] at 13. The parties' request for court intervention on these issues "necessarily calls upon the public resources of a judicial officer to examine and decide the question presented. This is the basic functioning of the judicial process that the public has a right to see, understand, and criticize if they choose." *Black v. Emerson*, No. 25-cv-01035-WJM-NRN, 2025 WL 1635264, at *5 (D. Colo. June 9, 2025). Accordingly, the Court finds that a qualified right of access exists. *See Courthouse News*, 53 F.4th at 1264.

But the Court's analysis does not stop there. Next that Court must balance "the qualified right of access against the interests asserted by [Defendants] seeking to restrict access." *Id*. The Court must consider whether closure is essential to preserve the sanctity of privileged, confidential attorney-client communications and is narrowly tailored to serve those interests. *Id*. at 1270.

Defendants rhetorically question how they can argue their motion effectively if they cannot discuss protected information at the hearing. *Reply* [#73] at 4. They add, "if the hearing is public, then Defendants request to not have one at all" because they would "have to present a perfunctory argument with much vagueness and little substance[.]" *Id*. In contrast, Plaintiff proposes handling "[n]arrow confidential topics . . . at a bench conference on a sealed portion of the transcript," presenting certain exhibits under restriction, generically referring to sensitive information on the record, and requesting targeted redactions of any transcript requested. *Response* [#72] at 14.

While Defendants contend that these proposed solutions would "mak[e] the hearing at least twice as long as need be," the Court is unpersuaded that no feasible alternatives to courtroom closure exist. For example, in *Aecom Technical Services, Inc. v. Flatiron | Aecom, LLC*, No. 19-cv-02811-WJM-KLM (D. Colo.), the court held an evidentiary hearing related to the plaintiff's request to claw back certain documents protected by the attorney-client privilege or the attorney work product doctrine that were accidentally produced in discovery. *See* 2021 WL 9937920, at *1 (D. Colo. July 27, 2021). The court only restricted public access to certain parts of the hearing. *See id*. Post-hearing, the court adjudicated a motion to restrict access to the hearing's transcript. The court rejected the movant's request to restrict the entire transcript and ruled that "only the portion of the Transcript that should be restricted is the portion that was closed to the public." *Id*.

Here, the Court anticipates that the parties can present at least some argument by referencing specific paragraphs or pages in the Complaint [#1], the Amended Complaint [#10], the stricken Motion for Temporary Restraining Order [#11], and any other filed materials that ostensibly contain privileged and confidential attorney-client communications without divulging the details on the record. The Court also anticipates that the parties can present at least some unrestricted argument about organizational structure and the breadth of the Plaintiff's attorney-client relationship with the City versus a more narrowly construed attorney-client relationship with the Department of Aviation. Additionally, the Court anticipates that the parties can present at least some argument regarding the application of Rule 1.6 of the Colorado Rules of Professional Conduct without divulging the details of privileged communications. While the Court may ultimately have to close the courtroom during the hearing, Defendants have not demonstrated that complete closure is narrowly tailored to protect Defendants' asserted interests.

Accordingly, the Court **denies** the Motion [#51] to the extent it seeks to completely and preemptively close the courtroom and to restrict public access to the May 4, 2026 hearing on Defendants' Motion for Entry of Protective Order and to Seal Certain Previously-Filed Documents [#44].

Based on the foregoing, IT IS HEREBY **ORDERED** that the Motion [#51] is **granted in part** and **denied in part**.

Dated: April 30, 2026

5