IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:26-cv1100-SKC-KAS

EVERETT BEN MARTINEZ,

Plaintiff,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants.

---

**ORDER**

---

Plaintiff Everett Ben Martinez is presently employed—albeit on investigative leave—as an Assistant City Attorney for the City and County of Denver (the City). For nearly four years, Plaintiff was the Division Director for the Department of Aviation.[1] Dkt. 50, ¶5; Dkt. 230, ¶17. During his tenure as Division Director, Plaintiff began to express various opinions regarding the City's land deal to acquire the Park Hill Golf Course (Park Hill Deal) and the City's decision to deny lease space at Denver

[1] Plaintiff, like his predecessor, was permitted to use the "working title" "General Counsel and Executive Vice President for the Airport" on his business cards and email signatures, but the working title did not change his role as an Assistant City Attorney. Dkt. 50-7, ¶9.

International Airport (DIA) to Key Lime Air.[2] *See generally* Dkt. 230. According to Plaintiff, after he began voicing these opinions, Defendants retaliated against him by denying him pay increases and upward job reclassifications. *Id.* ¶11.

In January 2026, Plaintiff submitted a written complaint to the City's Office of Human Resources (OHR) in which he "notified the Executive Director of OHR and the City Attorney's Office Representative to OHR that [City Attorney Michiko] Brown and the Mayor's Office were retaliating against him and were looking for a reason to get rid of him." *Id.* ¶189. According to the Second Amended Complaint, after Plaintiff filed his OHR complaint, the City gave him the lowest evaluation of his career. *Id.* ¶193. Thereafter, Plaintiff retained counsel who, on February 20, 2026, submitted a letter to the City explaining Plaintiff's constitutional claims and requesting that the alleged adverse and retaliatory actions stop. Dkt. 214-3.

On March 9, 2026, Plaintiff's attorney submitted another letter to the City with a position statement. In the letter, Plaintiff's counsel recounted the history of, and Plaintiff's opinions regarding, the Park Hill Deal and the Key Lime lease. Dkt. 214-4. In the position statement, Plaintiff's counsel described the alleged underlying facts of both transactions in greater detail, and he provided an analysis of Plaintiff's potential claims for discrimination and retaliation. Dkt. 214-5. He also noted that an

[2] The details of the Park Hill Deal and the Key Lime lease denial, as well as Plaintiff's impressions and actions regarding these transactions, are sealed pursuant to a protective order because they involve information subject to the attorney-client privilege or information that is confidential to the City. *See* generally Dkts. 75, 76, 79.

award of punitive damages against City Attorney Brown, Chief Financial Officer Nicole Dohney, and Chief Strategist Jeff Dolan, was realistic and foreseeable. *Id.* p.22.

Following these submissions, on March 11, 2026, the City concluded Plaintiff had taken an interest adverse to his client—the City—and was therefore conflicted out from further representing the City. Dkt. 230, at ¶19. Consequently, the City placed him on administrative leave and removed him from his role as Division Director for the Department of Aviation. *Id.* ¶17.

Plaintiff initiated this case on March 18, 2026. Dkt. 1. His original pleading contained a detailed and publicly available recitation of the events and his opinions regarding the Park Hill Deal and Key Lime lease denial. The following day, the City changed Plaintiff's employment status from "administrative" leave to "investigative" leave. Dkt. 230, ¶24. The City also filed a "Motion for Entry of Protective Order and to Seal Certain Previously-Filed Documents" ("PO Motion") because Plaintiff had disclosed information in his pleading that was either subject to the attorney-client privilege or otherwise confidential. Dkt. 50. Plaintiff argued he did not have an attorney-client relationship with the City and was only an attorney for DIA. Dkt. 101-1, ¶¶44(1), (2).

The Court referred the PO Motion to Magistrate Judge Kathryn A. Starnella. Following a three-hour evidentiary hearing, Judge Starnella agreed with the City. She found the City, not DIA, was Plaintiff's client and he had violated the Rules of

Professional Conduct when he filed pleadings and other documents disclosing privileged and confidential information regarding Park Hill and Key Lime. Dkt. 79, pp.52-67.

In his Second Amended Complaint, Plaintiff contends the City violated the First Amendment, the Fourteenth Amendment, the False Claims Act, and his right to make and enforce contracts as guaranteed by 42 U.S.C. § 1981. Dkt. 230. Regarding his First Amendment claims, Plaintiff asserts the City retaliated against him based on his opinions about the Park Hill Deal and the Key Lime lease denial (Claim One); his formal complaint to OHR (Claim Two); his counsel's letters and position statement (Claim Three); his filing of this civil action (Claim Four); and his alleged refusal to "accept the Defendant's invitations, encouragement, or pressure to work with them to 'take care of' [Phil] Washington," the now retired Chief Executive Officer of DIA (Claim Five). *See Id.* ¶¶217-250 (1st Claim), 251-269 (2nd Claim), 270-281 (3rd Claim), 282-291 (4th Claim), 292-304 (5th Claim).

Plaintiff also filed the present Amended Motion for Preliminary Injunction. Dkt. 214. Based on his third and fourth claims for relief under the First Amendment, Plaintiff seeks an order enjoining the City from removing him as Division Director for the Department of Aviation or attempting to terminate his employment. Dkt. 214, p.4 He also asks the Court to prohibit the City from disciplining him and to require it to reinstate his administrative leave. *Id.*

The Court has reviewed the Amended Motion, related briefing, and the record as a whole. No hearing is necessary. Because the Court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his third and fourth claims, the Motion is DENIED.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 65 authorizes the Court to enter preliminary injunctions. Fed. R. Civ. P. 65(a). Injunctive relief, however, is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Granting such "drastic relief" is the exception rather than the rule. *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). In the Tenth Circuit, a party requesting injunctive relief must clearly establish the following: (1) the party will suffer irreparable injury without the injunction; (2) the threatened injury outweighs whatever damage the injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Citizen Band Potawatomi Indian Tribe of Okla.*, 883 F.2d at 889.

If the injunction sought is of the "disfavored" variety, the moving party must make an especially "strong showing" that the likelihood of success and balance of

harms weigh in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). A disfavored preliminary injunction is one that: (1) mandates (rather than prohibits) action; (2) changes the status quo; or (3) grants all the relief the moving party could expect from a successful trial. *Id.* With these injunctions, a court must "more closely [scrutinize a motion for preliminary injunction] to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).[3]

Further, Rule 65(a) does not explicitly provide that any hearing, evidentiary or otherwise, is required before ruling on a motion for a preliminary injunction. *See generally* Fed. R. Civ. P. 65. Nor does the Tenth Circuit require a hearing or oral argument on a motion for a preliminary injunction. *Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane LLC*, 702 F. App'x 702, 705 (10th Cir. 2017) ("[N]either Fed. R. Civ. P. 65(a) nor this circuit's precedent require the district court to hold an evidentiary hearing or oral argument before deciding a motion for a preliminary injunction."). Rather, a court may deny an injunction without a hearing based on the written evidence (even when a hearing is requested) where "receiving

---

[3] Although the Parties do not address whether Plaintiff's request is "disfavored," the Court notes Plaintiff seeks an order *requiring* Defendants to change his leave classification from investigative to administrative and to retract all negative statements the City made about Plaintiff in the media. This is suggestive of a disfavored injunction. But the Court need not answer this question because even under the traditional standard, the Court finds injunctive relief is not warranted.

further evidence would be manifestly pointless." 11A Charles Alan Wright et al., Federal Practice and Procedure § 2949 (3d ed. 2020). *See also Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014) (district court within discretion to decide whether to hold an evidentiary hearing); *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (table) (same).

## ANALYSIS

### A. Substantial Likelihood of Success on the Merits

Plaintiff seeks a preliminary injunction on his third and fourth claims for relief arguing that Defendants retaliated against him for exercising his First Amendment rights. He claims Defendants put him on administrative leave and removed him as General Counsel for the airport because his attorney submitted the February 20 letter, and the March 9 letter and position statement (Claim Three). He also contends Defendants made disparaging remarks about him in the media and placed him on investigative leave in retaliation for filing this lawsuit (Claim Four). Dkt. 196, ¶¶270-81, 282-91. The City argues Plaintiff's speech is not protected by the First Amendment and its employment decisions were not prompted by retaliatory motives. *See generally* Dkt. 215.

When government employees speak on matters of public concern "'they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)); *see also*

*Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests 'in promoting the efficiency of the public services it performs through its employees.'" *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir.2011) (quoting *Pickering*, 391 U.S. at 568). When evaluating a government employee's claim for First Amendment retaliation, the Court balances five factors known as the *Garcetti/Pickering* test:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1250 (10th Cir. 2024) (quoting *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014)). The first three factors are questions of law while the last two are questions of fact. *Eisenhour*, 774 F.3d at 1227-28. All five factors are necessary to the success of Plaintiff's First Amendment retaliation claims. *See Calderon v. City & Cnty. of Denver*, No. 24-cv-02406-NYW-TPO, 2026 WL 2185110, at *7 (D. Colo. July 29, 2026). The Court finds the failure of factors two and three are dispositive for Plaintiff's claims.

**1. <u>Matter of Public Concern</u>**

In two paragraphs, Plaintiff contends he has satisfied this element of the *Garcetti/Pickering* test because "his petitions to the government address public

concerns, including [his various opinions on the Park Hill Deal and the Key Lime lease denial.]" Dkt. 214, p.12. This argument is problematic for several reasons. First, it is wholly underdeveloped. Plaintiff's analysis does not distinguish between the multiple instances of his speech—the February 20 letter, the March 9 letter and position statement, and his filing this case. He instead conflates the nature or content of his speech when his separate instances of speech covered multiple matters. In this way, Plaintiff has shirked an analysis of whether his distinct instances of speech were on matters of public concern.

A statement is a matter of public concern, and not merely a personal grievance, "if it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138 (1983)) (cleaned up). It is not enough for the speech to be related generally to a subject of public interest; rather, it must also "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Wilson v. City of Littleton, Colo.*, 732 F.2d 765, 768 (10th Cir. 1984). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* (citing *Connick*, 461 U.S. at 147-48). In analyzing whether speech constitutes a matter of public concern, the Court may consider "the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals

with personal disputes and grievances unrelated to the public's interest." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000).

In the Tenth Circuit "each instance of speech should be treated separately when there are multiple instances of speech, each dealing with separate subjects." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1187 (10th Cir. 2010) (cleaned up). And when an instance of speech involves multiple subjects, "the question of whether speech should be balanced separately is fact sensitive" and depends on the interrelation of the different aspects of the speech. *Id.* at 1188 (citing *Johnsen v. Indep. Sch. Dist. No. 3 of Tulsa Cnty., Okl.*, 891 F.2d 1485, 1492 (10th Cir. 1989)). "Factors that could be considered in determining whether the speech is interrelated include the time frame in which the speech occurred, the different audiences to which the speech may have been directed, the continuity of the speech, and the degree to which the different aspects of speech built upon each other to create a cumulative impact on the state employer." *Johnsen*, 891 F.2d 1492.

**a. Letters & Position Statement (Claim Three)**

Beginning with the February 20 letter, the Court finds it does not address a matter of public concern because it is directed to the City as Plaintiff's employer, focuses entirely on Plaintiff's personal legal claims against the City, and contains no details or opinions on the Park Hill Deal or the Key Lime lease. Dkt. 214-3. Plaintiff's claims of discrimination in this letter are not matters of public concern because they focus solely on the personal conditions of his employment and his litigation threats

or overtures of settlement. *Id. See Joritz v. Gray-Little*, 822 F. App'x 731, 739 (10th Cir. 2020) (where plaintiff's complaints regarding discrimination related only to the conditions of her employment and prospects for receiving tenure, they were not matters of public concern); *see also Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (allegations of sexual harassment were not matters of public concern absent any indication that plaintiff sought "to debate issues of sex discrimination" or otherwise reveal official misconduct).

Regarding the March 9 letter and position statement, these documents do include details regarding the Park Hill and Key Lime matters in addition to Plaintiff's claims of retaliation and damages. But in these documents the history of the Park Hill Deal and Key Lime lease, and Plaintiff's opinions on those subjects, are plainly included as background for Plaintiff's constitutional claims and threats of litigation or overtures for settlement, as opposed to seeking further public debate on those two matters.

To be sure, from the context of these three instances of speech, it is evident that Plaintiff's motive in sending these documents was not "calculated to disclose misconduct," but instead was calculated to deal "with only personal disputes and grievances with no relevance to public interests." *Brammer-Hoelter*, 602 F.3d at 1188. Most telling of the context of personal grievance here is that each of the March 9 documents are boldly marked "**Confidential Settlement Communication Pursuant to Fed. R. Evid. 408**." And the March 9 letter further says: "[Plaintiff]

remains willing to resolve these matters *privately* and constructively. . ." Dkts. 214-4, 214-5. The February 20 letter similarly expresses Plaintiff's desire to resolve his concerns "quietly, and confidentially." Dkt. 214-3, p.3. So, a First Amendment retaliation claim cannot be premised on the letters or position statement because they do not include speech on matters of public concern. Plaintiff has failed to establish a substantial likelihood of success on the merits of his third claim.

**b. Lawsuit (Claim Four)**

Like the March 9 letter and position statement, Plaintiff's speech in filing this lawsuit is a single instance of speech involving multiple subjects—the now redacted details of the Park Hill Deal and the Key Lime lease denial in addition to Plaintiff's claims of retaliation and discrimination. Dkts. 90 (Complaint), 230 (Second Amended Complaint).[4] The question then is whether these subjects should be balanced separately. *Johnsen*, 891 F.2d at 1492. The answer is no. Even if the Court accepts that Park Hill and Key Lime are matters of public concern, the Court finds these subjects aren't separable from Plaintiff's personal discrimination claims. Instead, much like the March 9 documents, the allegations about Park Hill and Key Lime are again included as the context and background for Plaintiff's personal disputes and grievances—i.e., Plaintiff internally (to the City) expressed opinions on those subjects and now claims (in this lawsuit) the City retaliated against him for doing so. In other

[4] The First Amended Complaint is located at Dkt. 10, but is sealed because it contains confidential information. It does not appear a redacted version was filed with the Court.

words, those matters are not referenced in this lawsuit for the purpose of disclosing wrongdoing to the public. Indeed, Judge Starnella determined that these details should have been sealed from public view at the outset of this case. Dkt. 79, pp.52-67.

The timing of Plaintiff's lawsuit also supports this Court's conclusion because the case was not filed until after the February 20 and March 9 communications failed to result in a settlement. Certainly, had Plaintiff's settlement overtures been successful, this action would not have been filed. Because this lawsuit is merely an extension of Plaintiff's efforts to resolve his personal employment disputes, it is not a matter of public concern. Consequently, Plaintiff has failed to demonstrate a likelihood of success on the merits of his fourth claim for relief.

**2. <u>Government's Efficiency Interests</u>**

Even assuming *arguendo* that Plaintiff's lawsuit is a matter of public concern, the Court would nevertheless conclude that the City's efficiency interests outweigh Plaintiff's interest in free speech. The Tenth Circuit has held that "[t]he only public employer interest that outweighs the employee's free speech interest is avoiding direct disruption, *by the speech itself*, of the public employer's internal operations and employment relationships." *Trant v. Oklahoma*, 754 F.3d 1158, 1166 (10th Cir. 2014) (emphasis in original). "In conducting the required balancing of interests, the court examines the manner, time, and place of the speech, as well as the context in which the dispute arose." *Weaver v. Chavez*, 458 F.3d 1096, 1100 (10th Cir. 2006) (quoting

*Connick v. Myers*, 461 U.S. 138, 152–53 (1983)). Relevant considerations also include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S. Ct. 2891, 2899, 97 L. Ed. 2d 315 (1987) (citing *Pickering*, 391 U.S. at 570-573). The employer bears the burden of establishing the disruptive effects. *Duda v. Elder*, 7 F.4th 899, 912 (10th Cir. 2021).

In his Motion, Plaintiff argues "his conduct, [his opinions and actions regarding Park Hill and Key Lime], and his retaining an attorney and providing notice of his claims did not disrupt any function of the City." Dkt. 214, p.13. But like his other arguments, this too is incomplete. Plaintiff conflates his Park Hill and Key Lime opinions and conduct, the February 20 letter, and the March 9 letter and position statement, and contends they, collectively, were not disruptive. Again, however, each instance of speech must be evaluated separately. *Brammer-Hoelter*, 602 F.3d at 1187. Plaintiff fails to do this analysis and, in fact, does not mention his lawsuit at all under this factor. *Id.* But Plaintiff's fourth claim for relief is based on his allegations that Defendants retaliated against him because he filed this case (Dkt. 230, ¶¶282-291), and therefore, the Court considers whether the City's efficiency interests in avoiding direct disruption *by Plaintiff's lawsuit* outweighs Plaintiff's interest in free speech.

The Supreme Court has observed that a government employee's lawsuit against her employer may be "particularly disruptive." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 390 (2011) "Unlike speech of other sorts, a lawsuit demands a response. Mounting a defense to even frivolous claims may consume the time and resources of the government employer." *Calderon v. City & Cnty. of Denver*, No. 24-cv-02406-NYW-TPO, 2026 WL 2185110, at *8 (D. Colo. July 29, 2026) (citing *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 390 (2011)).

As discussed above, Judge Starnella concluded—and Plaintiff did not object—that Plaintiff was an attorney for *the City* and not just the Department of Aviation. Dkt. 79, p.54. She also found that because of the attorney-client relationship, Plaintiff's original and amended complaints improperly disclosed privileged and confidential information that Plaintiff learned during his representation of the City. *Id.* pp.52-62. Further, the City has presented extensive evidence that Plaintiff's "breach of his ethical and professional obligations destroyed the trust and confidence Plaintiff had within the [City Attorney's Office] and with other City officials, which are essential to providing legal advice and, thus, to effective operation of the CAO." *See, e.g.*, Dkt. 215-4, Steinberger Decl. III ¶ 3; Dkt. 215-1, Brown Decl. III ¶ 23; Dkt. 44-16, Dolan Decl. ¶¶ 4-6; Dkt. 44-17, Garnett Decl. ¶¶ 5-6; Dkt. 44-10, Brown Decl. ¶¶ 6-8; Dkt. 44-7, Bronson Decl. ¶¶ 10-12. Plaintiff has presented no evidence to the contrary, and therefore, the disruptive nature of his speech is unrefuted.

In addition, although this matter has been pending for less than a year, it has more docket entries than many cases twice that old. The City has spent considerable time and energy ensuring its confidential matters are sealed from public view, all of which could have been avoided had Plaintiff abided by his ethical obligations as an attorney and redacted those matters from the beginning. Thus, when balancing Plaintiff's interest in free speech against the City's interest in avoiding direct disruption, the Court finds the City has met its burden of establishing the disruptive effect of Plaintiff's lawsuit. This too is dispositive of Plaintiff's request for a preliminary injunction.

**B. The Remaining Preliminary Injunction Requirements**

Plaintiff has not shown a likelihood of success on the merits of his claims for First Amendment retaliation, and "there is, of course, no irreparable harm cognizable by law if there has been no infringement." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp. 2d 1235, 1257 (D. Colo. 2009). As for the balance of the equities, this factor compares the injury Plaintiff would suffer without a preliminary injunction versus the injury the City would suffer with one. *Haggard v. Spine*, No. 09-cv-00721-CMA-KMT, 2009 WL 1655030, at *15 (D. Colo. June 12, 2009). Because Plaintiff has not established a likelihood of success on the merits, the harm the City would suffer—continuing to pay Plaintiff while being prevented from hiring his replacement—would be substantial. Finally, the public would not be served by an injunction because the Department of Aviation is presently understaffed and public

funds are being diverted to Plaintiff for a job he is not performing and for which he cannot be replaced. Thus, these factors weigh against entering a preliminary injunction.

* * *

For the reasons shared above, Plaintiff Everett Ben Martinez' Amended Motion for Preliminary Injunction on his First Amendment retaliation claims is respectfully DENIED.

Dated: November 24, 2026

BY THE COURT:

S. Kato Crews
United States District Judge